# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

                **Plaintiff,**        Case No. 3:07CR54(2)

**-vs-**

                                **District Judge Thomas M. Rose**

**CARLOS GARRISON,**

                **Defendant**
_____

### ENTRY AND ORDER DENYING DEFENDANT'S
### MOTION TO SUPPRESS (DOC. #42)
_____

This matter comes before the Court pursuant to Defendant's Motion to Suppress (Doc. #42) filed with this Court on September 12, 2007. The Court convened a hearing on said Motion November 30, 2007 which continued on December 19, 2007. The Government called three (3) witnesses, Det. Tim Bilinski, and Det. Brad David Williams while the Defendant called one (1) witness, Detective Rebecca Rose. The Court admitted four (4) Government Exhibits (Exh. 1, 6, 7 and 8) without objection. Subsequent to this hearing, Defendant filed a Brief in Support (Doc. #55) on January 28, 2008, followed by the Government's Response (Doc. #59) filed February 1, 2008 and Defendant's Reply (Doc. #60) filed March 6, 2008.

Defendant's Motion to Suppress (Doc. #42) requests the Court suppress all tangible evidence seized by the Government and any statements allegedly made by Defendant due to the illegality of the search and seizure.

**Facts**

Det. Tim Bilinski of the Dayton Police Department, on March 17, 2007, with several other law enforcement officers were present and monitoring the area surrounding the Bill Goodman Gun and Knife Show held at Hara Arena, Trotwood, Ohio.

During this monitoring, Det. Bilinski observed a white female, later identified as Catherine Smith, walking around the parking lot of Hara Arena for approximately twenty to thirty minutes.  This lady was carrying a  large case and a bag that appeared to be weighted down.  Based on experience, Det. Bilinski recognized the case to be one that would typically store an assault style pistol and the bag to contain objects with outlines consistent with handgun cases.

After twenty to thirty minutes, Det. Bilinski observed a Mercury Grand Marquis, occupied by two African American males drive toward the woman and stop near by her.  The woman entered the vehicle through the right rear passenger door, at which time the vehicle left the parking lot and area.

Making these observations, Det. Bilinski considered the observed activity suspicious and what could constitute possibly a potential straw purchase of guns from the gun show.  Det. Bilinski informed other law enforcement officers in the area around the arena of his suspicions, the vehicle description and its direction of travel.  It would appear Det. Bilinski had no other information other than his observations.  He had no real knowledge of what transpired inside the gun show or the identity of the female or the two males.  Det. Bilinski did instruct the other law enforcement officers, to whom he relayed his observations and information, that they should stop the vehicle for any traffic violation they may observe that would legally justify making such a stop.

It would appear from the Court's review of the testimony that there was some conflict in the testimony of Det. Bilinski as to what he knew and observed and the testimony of other law enforcement witnesses as to what was relayed by Bilinski as his reasons for his suspicions. However, it is not contested or disputed that the vehicle was stopped, after an officer ran the license plate number twice, due to the fact that the license plate on the vehicle did not match or belong on the vehicle. The plates returned not to that Mercury, but to a Toyota.

Based upon the information, two officers, Sgt. Jon Moeggenberger of the Trotwood Police Department and Det. Becky Rose of the Dayton Police Department, effectuated a stop for unauthorized plates at approximately 16:16:04. Co-Defendant, Adrian Garrison exited the driver's seat of the Mercury. Knowing that the vehicle had just left the gun show, Sgt. Moeggenberger asked if anyone in the vehicle had weapons. Simultaneously, Det. Rose approached the vehicle and observed a gun case and plastic bag containing outlines of boxes on the back seat of the car. Defendant Carlos Garrison and the white female were asked to exit the car.

As Sgt. Moeggnberger explained the reason for the traffic stop to Co-Defendant Adrian Garrison, the white female spoke with Det. Brad Williams, a Trotwood officer, who also responded to the scene.

Co-Defendant Adrian Garrison, indicated to Sgt. Moeggenberger that he had rented the car from Avis for which he had paperwork. Sgt. Moeggenberger felt it necessary to first to obtain and run Co-Defendant, Adrian Garrison's driver's license. As the Sergeant and Co-Defendant Adrian Garrison conversed, the officer, due to the Co-Defendant's movements, requested Co-Defendant Adrian Garrison not to put his hands in his pockets.

While the license was being run, Sgt. Moeggenberger and the other officers patted down the occupants of the vehicle and had a drug dog run the vehicle.  These pat downs were conducted due to (1) the information relayed about the gun show and possible guns being in the car and, (2) observations by Det. Rose of gun cases in the back seat.

As the drug dog was run around the vehicle and Sgt. Moeggenberger completed the pat down of Co-Defendant Adrian Garrison, he proceeded to pat down Defendant Carlos Garrison.  As testified, a baggie containing marijuana was discovered on Defendant Carlos Garrison.  Given the presence of the marijuana and drug paraphernalia (the baggie) the officers placed Defendant Carlos Garrison under arrest.  The officers also advised Co-Defendant Adrian Garrison that he was now being detained (not under arrest) and was placed in a patrol car.  Sgt. Moeggenberger, at that time, asked for and received the rental contract from Co- Defendant Adrian Garrison.

In the meantime, Det. Brad Williams had been interviewing the white female.  Although disputed by the female, Det. Williams indicated that after being advised of her Miranda rights, the female indicated she had just purchased three guns – namely "two 380's and a Mac" – for the Garrisons at the Bill Goodman Show.  Det. Williams indicated the female stated that the Garrisons provided her with money to purchase these firearms and when purchased she gave the guns to the Garrisons in the parking lot of the Hara Arena.

The officers searched the Mercury and recovered from its back seat three firearms – namely, two 380s and a Mac 10; which were located in the gun cases that officers had previously observed the female carrying from the Bill Goodman show.  During the stop, Sgt. Moeggenberger learned that both Defendants Adrian Garrison and Carlos Garrison had prior felonies that prevented them from owning, possessing or purchasing firearms.

## Analysis

Defendant Carlos Garrison moves to suppress the three firearms recovered from the Mercury Grand Marquis he was driving on March 17, 2007.  Specifically, the Defendant challenges the duration and scope of a traffic stop which ultimately led to the discovery of the weapons.

From the evidence presented, the Court concludes that the initial stop of the automobile driven by Co-Defendant Adrian Garrison was reasonable.  Sergeant Jon Moeggenberger, upon observing the Mercury Grand Marquis in question, ran the license plate twice through his mobile data terminal and on both occasions the license plate returned to a Toyota and not the Mercury.  The Fourth Amendment permits an officer who has probable cause to believe that a traffic violation is occurring to detain an automobile [and it's occupants] regardless of the officer's subjective motivation for the stop.  See United States v. Burton, 334 F.3d 504, 516 (6th Cir. 2003).

However, such a traffic stop must be legal not only at its inception but also reasonable in scope to the circumstances that originally justified the stop.  Here the evidence describes a traffic stop of approximately six minutes in duration.  Within approximately three minutes of stopping the Mercury Marquis driven by Co-Defendant Adrian Garrison for improper plates, the officers discovered marijuana on passenger and Defendant Carlos Garrison which permitted them to extend the stop.

Initially upon stopping the vehicle and explaining the traffic stop to Co-Defendant Adrian Garrison, Sergeant Moeggenberger asked Co-Defendant for his driver's license which

was run through the department's computer system. As pointed out in the testimony, it is undisputed that such a check takes anywhere from three to seven minutes to complete. Within that time frame, Sergeant Moeggenberger conducted a pat down of both Defendant Carlos Garrison and Co-Defendant Adrian for safety reasons that were based upon the observations of the female with what appeared to officers to be gun cases from the gun show placed in the vehicle. Sergeant Moeggenberger was concerned that the occupants of the vehicle were armed with guns.

   This pat down of both Defendant Carlos Garrison and Co-Defendant Adrian Garrison occurred approximately three minutes after the stop and initial conversation with Co-Defendant Adrian Garrison.

   It was at this point Sergeant Moeggenberger discovered marijuana on Defendant Carlos Garrison. This pat down neither exceeded the scope of the stop nor unreasonably prolonged the detention of Defendant Carlos Garrison and Co-Defendant Adrian Garrison.

   Defendant Carlos Garrison asserts that the traffic stop should have ended when Co-Defendant Adrian Garrison informed the officers that he had rented the vehicle and had with him the rental agreement. However, the Court would agree with the Government that it was still reasonable and appropriate to run the Co-Defendant's license. As long as an unreasonable delay does not result, it is well within the discretion of the officer as to what investigative technique is used.

   Once the officers discovered the marijuana on Defendant Carlos Garrison, the officers had reasonable suspicion to extend the search.

   At the time of the Defendant's arrest for marijuana possession, he had just exited from the Mercury Marquis. Given Defendant's temporal, if not spatial proximity to the car at the

time of his arrest, officers permissibly searched the vehicle incident to that arrest.  When police officers have arrested an occupant or recent occupant of an automobile "the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest."  Thornton v. United States, 541 U.S. 615, 617 (2004).

Although Defendant Carlos Garrison attempts to challenge the search of the automobile and seizure of the firearms, a passenger in a car has no standing to challenge a search of that vehicle or seizure of the vehicle's contents because he lacks a legitimate expectation of privacy in these areas.  See United States v. Garcia, 496 F.3d 495, 503 N e (6th Cir 2007) .  In this case, Defendant has not demonstrated that he has standing to challenge the search of the Mercury or seizure of the firearms from its passenger compartment.  No evidence was presented that he had any ownership in or control over the Mercury.

However, assuming that Defendant had standing, the Court would find the officers properly searched the Mercury incident to Defendant's lawful arrest.

Additionally, Sergeant Moeggenberger had a reasonable suspicion to prolong this stop under the totality of the circumstances.  As previously detailed, the female passenger was roaming in the parking lot of the Bill Goodman Gun and Knife Show for approximately 20-30 minutes with boxes and bags thought to be gun cases prior to being picked up in this vehicle by Defendant Carlos Garrison and Co-Defendant Adrian Garrison.  In addition, Co-Defendant appeared to be untruthful and/or evasive in responding to the officer's questions.   Finally, the female was reported, by Detective Williams, another officer on the scene, to disclose her straw purchases for the Defendant Carlos Garrison and Co-Defendant Adrian Garrison.

Therefore, based on this analysis, the Court finds Defendant's Motion to Suppress not well-founded. Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

**April 4, 2008**                                             **\*s/THOMAS M. ROSE**

                                                                                                    _____
                                                                                                    JUDGE THOMAS M. ROSE
                                                                                                    UNITED STATES DISTRICT COURT